[Civ. No. 12189. Third Dist. Oct. 16, 1969]

SUZANNE WEST MARTIN, Plaintiff and Appellant, v. BOARD OF ADMINISTRATION, PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Defendant and Respondent.

Ralph D. Drayton for Plaintiff and Appellant.

Thomas C. Lynch, Attorney General, and William J. Power, Deputy Attorney General, for Defendant and Respondent.

FRIEDMAN, Acting P. J.—Plaintiff brought this declaratory relief action against the State Employees' Retirement System (now the Public Employees' Retirement System) to determine entitlement to the sum of $8,177 held by the clerk of court. The trial court entered a summary judgment declaring entitlement in the retirement system, and plaintiff appeals.

Plaintiff's deceased husband had been a member of the retirement system. He died on June 11, 1962. On June 7, 1963, the surviving family brought a wrongful death action against a third party tortfeasor. The retirement system was unaware of the lawsuit. Sometime about the end of 1963, the retirement system paid death benefits to the surviving family. Not until October 25, 1967, did the retirement system gain knowledge of the wrongful death action. A few days later, on November 1, 1967, it filed a claim of lien in that action.

Later, the surviving family, the tortfeasor and the retirement system entered into a settlement. The tortfeasor paid an agreed sum of damages. ■ By stipulation $8,177 of the settlement was deposited in court as the amount subject to the retirement system's lien, if it had a valid lien. Plaintiff asserts that it did not.

The retirement law subrogates the retirement system to the rights of its employee against one who causes the employee's injury or death. The financial extent of subrogation is fixed by Government Code section 21451. As amended in 1965, that section provides: "If benefits are payable under this part [Public Employees' Retirement Law] because of an injury to or the death of a member and such injury or death is the proximate consequence of the act of a person other than his employer (the state or the employing contracting agency), the board may on behalf of this system recover from such person an amount which is the lesser of the following:

"(1) An amount which is equal to one-half of the actuarial equivalent of the benefits for which this system is liable because of such injury or death; or

"(2) An amount which is equal to one-half of the remaining balance of the amount recovered after allowance of that amount which the employer or its insurance carrier have paid or become obligated to pay."

Government Code sections 21452 and 21453 permit the retirement system's board of administration to contract with the Attorney General for the recovery of subrogated amounts and authorize that officer to bring actions, file liens or intervene in court actions "in the same manner and to the same extent" provided by the Labor Code provisions which deal with the subrogation of employers or insurance carriers who have paid out workmen's compensation benefits.

Plaintiff points out that general damages in a wrongful death action are limited to the pecuniary value of future support, guidance and companionship. She argues that these elements of damage to the family are altogether different from the special damage caused to the retirement system; that imposition of a lien on a wrongful death settlement or recovery unfairly forces the surviving family to bear damages which they did not cause and which are really attributable to the tortfeasor. She seeks a statutory interpretation avoiding this result.

Notwithstanding some surface appeal, the argument falls. The subrogation provisions of the retirement law are part of the body of statutes defining the rights of covered employees. The financial measure of the subrogee's claim is entirely statutory. As the court observed in *Bilyeu* v. *State Emp. Retirement System* (1962) 58 Cal.2d 618, 627 [24 Cal. Rptr. 562, 375 P.2d 442] : "[I]t is manifest that the Legislature intended that the lien of the retirement system extend to the full amount of the judgment not otherwise allocated to proper and stated purposes."

Plaintiff's claim of unfairness dissipates in the light of statutory history. In 1962, when *Bilyeu* was decided, section 21451 permitted the retirement system to recover the entire actuarial equivalent of the benefits provided by the state's contributions. In the *Bilyeu* case, Peters, J., filed a concurring opinion, observing that the retirement system's subrogation claim might leave the injured employee no remnant of the damages, hence that further legislative study was needed. (58 Cal.2d at p. 629.) Several years later, in 1965, the Legislature

amended section 21451 to reduce the retirement system's maximum recovery to the 50 percent basis now provided. Again, in 1968, the Legislature adopted Government Code section 21456, eliminating any right of subrogation for amounts paid out as a basic death benefit or as a survivor's allowance under specified provisions of the retirement law.

Here both sides agreed at oral argument that $8,177 is the proper amount at stake. We do not know at what statutory stage this calculation was made and simply accept the parties' declared satisfaction with the calculation. The 1965 and 1968 enactments, at any rate, represent a statutory response to the possibility of unfairness and emphasize the Legislature's exclusive control over the measure of subrogation.

Plaintiff asserts that the lien procedure is particularly injurious, because in an independent lawsuit against the tortfeasor the retirement system could recover its own special damages without imposing on the damages suffered by the employee or his family. The argument rests upon an incorrect premise. Subject to the specific demands of the Government Code, the Labor Code subrogation provisions fix the ''extent'' of the retirement system's recovery. (*Bilyeu* v. *State Emp. Retirement System,* *supra,* 58 Cal.2d at page 627.) In an independent action against the tortfeasor, an employer—or, in this case, the retirement system—cannot recover indemnity over and above the damages recoverable by the employee or his survivors. (*Smith* v. *Trapp* (1967) 249 Cal.App.2d 929, 936 [58 Cal.Rptr. 229] ; *Eckman* v. *Arnold Taxi Co.* (1944) 64 Cal.App.2d 229, 234 [148 P.2d 677].)

*Board of Administration* v. *Ames* (1963) 215 Cal.App.2d 215 [29 Cal.Rptr. 917] (hearing denied), does not hold otherwise. There, the injured employee gave a release to the tortfeasor without the consent of the retirement system, which then sued the tortfeasor to recover the actuarial equivalent of its disability payments to the employee. Although the opinion does not say so, it may be assumed that the tortfeasor had paid the employee a settlement. The court upheld recovery of disability payments by the retirement system, because the Labor Code invalidated any settlement without the employer's consent. The *Ames* case does not sanction recovery of damages over and above the tortfeasor's common law liability. The most orderly procedure for fulfillment of the subrogation would assemble all the parties in a single lawsuit, where the tortfeasor's liability for common law damages would be fixed

and litigation expenses paid; statutory subrogees, such as a workmen's compensation carrier or the retirement system, would then get reimbursement and the remainder would be paid to the injured employee or his family. (See *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641]; Lab. Code, §§ 3853-3856.)

Finally, plaintiff invokes the bar of limitations. Among the subrogation provisions of the retirement system is Government Code section 21455, which declares: "Actions brought by the board under this chapter shall be commenced within three years after the liability of the system to pay benefits is fixed. Liability of the system is fixed at the time the board approves the payment of benefits under this part."

The retirement system paid benefits to the surviving family about the end of 1963, and did not file its claim of lien in the wrongful death action until November 1, 1967. Plaintiff urges that the retirement system's lien is extinguished by expiration of the three-year period in which an action may be filed on the claim. She relies on that portion of Civil Code section 2911 which declares: "A lien is extinguished by the lapse of time within which, under the provisions of the Code of Civil Procedure . . . (1) An action can be brought upon the principal obligation, . . . ." The retirement system counters with the contention that plaintiff should have given it notice of her lawsuit in conformity with the procedure established in workmen's compensation subrogation cases. (See Lab. Code, § 3853.)

Civil Code section 2911 is a general statute applicable to those liens secured by obligations which in turn are subject to the various periods of limitation in the Code of Civil Procedure. It does not control the enforcement of liens under special statutes. (*Raisch* v. *Myers* (1946) 27 Cal.2d 773, 778 [167 P.2d 198]; *Ward* v. *Chandler-Sherman Corp.* (1946) 76 Cal.App.2d 373, 378 [172 P.2d 900].) Here the subrogation claim, its methods of collection and the period of limitations are governed by special statutes.

As noted in the *Bilyeu* case, 58 Cal.2d at page 627, the retirement subrogation law authorizes collection procedures in the "manner" and "extent" described by the workmen's compensation subrogation provisions of the Labor Code. After expiration of the period of limitations, a workmen's compensation subrogee may not commence an independent lawsuit against the tortfeasor; nevertheless, he may intervene in a timely lawsuit brought by the employee, since the latter's

action is filed for the benefit of all entitled to share in it. (*Harrison* v. *Englebrick* (1967) 254 Cal.App.2d 871, 874 [62 Cal.Rptr. 831].) Asserting a lien in the employee's lawsuit and intervening in it accomplish identical substantive results. (See *Witt* v. *Jackson, supra,* 57 Cal.2d at p. 69.) The period of limitations upon the independent lawsuit of a workmen's compensation subrogee no more governs the lien procedure than it does intervention.

Since the workmen's compensation subrogation procedures are almost wholly encompassed in the retirement law, the same result ensues when the retirement system asserts a lien or intervenes. Literally, Government Code section 21455 applies to "actions brought by the board," not to the board's intervention or lien assertion in the employee's timely action. The workmen's compensation rule demonstrates that section 21455 is not to be extended beyond its literal terms. Its purpose is to prevent assertion of stale claims against the tortfeasor. That purpose was fulfilled when the survivors instituted the wrongful death action within one year of the death. (*Harrison* v. *Englebrick, supra,* 254 Cal.App.2d at p. 875.)

Under the facts of this case the retirement system's position was neither harmed nor helped by plaintiff's failure to notify it of her wrongful death action. Hence we do not decide whether she was required to comply with the notice provision of Labor Code section 3853.

Judgment affirmed.

Regan, J., and Janes, J., concurred.